<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH ARUANNO, | Civil No. 11-1842 (JLL) |
| Plaintiff, | |
| | <u>OPINION</u> |
| v. | |
| STEVEN JOHNSON, et al., | |
| Defendants. | |

**APPEARANCES:**

    JOSEPH ARUANNO, #363
    Special Treatment Unit- Annex
    P.O. Box #CN905
    Avenel, NJ 07001

**LINARES**, District Judge:

Joseph Aruanno, who is civilly committed under the New Jersey Sexually Violent Predator Act, seeks to file a Complaint against Steven Johnson, Assistant Superintendent of the Special Treatment Unit, Director Merrill Main, and 25 John/Jane Does. <u>See</u> 28 U.S.C. § 1915(a). This Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>. This Court has screened the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and, for the reasons explained below, will dismiss the Complaint with prejudice for failure to state a claim upon which relief may be granted. <u>See</u> <u>Tucker v. Arnold</u>, 361 Fed. App'x 409 (3d Cir. 2010).

## I.  BACKGROUND

Plaintiff has been civilly committed as a sexually violent predator since 2004. As explained by the Third Circuit Court of Appeals,

[i]n 1994, while in Florida, he exposed himself to two adolescent girls as they were walking home from school and engaged in lewd conduct in their presence. As a result of this incident, Aruanno pled guilty to second-degree lewd conduct, and was sentenced to ten years' probation. Just two years later, in 1996, Aruanno sexually molested an eight-year-old girl who had been playing on the front steps of her house in Wildwood, New Jersey. A jury convicted Aruanno of second-degree sexual assault, and he was sentenced to ten years in prison, and disqualification from parole for five years. The Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence. The New Jersey Supreme Court denied certification. <u>State v. Aruanno</u>, 793 A. 2d 716 (N.J. 2002) (table op.).

In April 2004, while Aruanno was still serving his prison sentence, the State of New Jersey . . . filed a petition to involuntarily commit Aruanno pursuant to the New Jersey Sexually Violent Predator Act ("SVPA), N.J.S.A. § 30:4-27.24 <u>et seq.</u> . . . .

At the commitment hearing, the State presented the testimony of Dr. Vivian Shnaidman . . . . Dr. Shnaidman testified that Aruanno was a chronic paranoid schizophrenic, but her diagnosis explicitly ruled out diagnoses of exhibitionism and pedophilia. Nevertheless, Dr. Shnaidman opined that Aruanno's schizophrenia, when combined with his previous violent conduct, created a "very high" risk of future violence. In particular, because Aruanno refused to take psychotropic medication to treat his schizophrenia, he would continue to suffer from psychotic delusions which would render sex offender treatment useless. According to Dr. Shnaidman, Aruanno would have serious difficulty controlling his sexually predatory behavior without undergoing treatment for his schizophrenia . . . .

Aruanno testified on his own behalf at the hearing. He denied committing either the Florida or the New Jersey offense, and testified that he believed the State had filed the commitment petition in retribution for his decision to go to trial for the New Jersey offense, rather than accepting a deal to plead guilty . . . .

The state court found that Aruanno suffered from a mental abnormality which created "substantial, significant, severe difficulty controlling his sexually violent behavior," and granted the State's petition for involuntary commitment. Aruanno appealed the order, and the Appellate Division affirmed. <u>In re Civil</u>

>   Commitment of J.A., 2007 WL 609284 (N.J. Super. Ct. App. Div. 2007).

Aruanno v. Hayman, C.A. No. 09-3499 slip op., pp. 2-4 (3d Cir. May 27, 2010).

In 2009, the Appellate Division of the New Jersey Superior Court reversed the Law Division's May 3, 2007, order denying post-conviction relief on the New Jersey conviction, vacated the conviction, and remanded the case.[1] See State v. Aruanno, 2009 WL 1046033 (N.J. Super. Ct. App. Div. April 21, 2009), certif. denied, 199 N.J. 543 (2009) (table).

Since being detained in New Jersey, Mr. Aruanno has filed over 28 civil cases in this Court, and 27 appeals in the United States Court of Appeals for the Third Circuit.

In the Complaint presently before this Court, Plaintiff asserts the following facts:

> Like a Phoenix rising from the ashes this case arises from case # 08-305 from the District Court of New Jersey to address the crimes that were committed to obstruct justice in that case denying JA his Constitutional Due Process rights which resulted in the failure of that case.
>
> During the course of that case the courts permitted the defendants to engage in a series of retaliatory incidents such as isolating JA for long periods of time without his legal papers, access to a law library, etc., as well as damaged certain legal papers by soaking them with water and throwing others out . . . .
>
> And all of which also resulted in not being able to produce other discovery for which the court rewarding the defendants for their criminal action(s) by dismissing that case.
>
> Also, as pointed out, during this entire time the court, or more specifically Judges Jose Linares and Claire C[]ecchi, totally avoided the many motions and petitions submitted to the court revealing the crimes being committed in order to obstruct justice.

(Docket Entry #1-1, pp. 1-2.)

---

[1] This Court was not able to determine through online research the outcome of the remand.

## II.  STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] which was previously applied to determine if a federal complaint stated a claim.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience

---

[2] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

> and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct, with regard to Rule 8 allegations, a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Tp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983.  See Iqbal, 129 S Ct. at 1947-48.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

"Like prisoners, individuals who are involuntarily committed to a mental institution have the right to access the courts."  Tucker v. Arnold, 361 Fed. App'x 409, 409 (3d Cir. 2010).  Standing of civilly committed persons to pursue an access to courts claim is governed by Lewis v. Casey, 518 U.S. 343, 349 (1996).  See Tucker, 361 Fed. App'x at 411.  "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit."  Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir.), cert. denied, Stover v. Beard, 129 S. Ct. 1647 (2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)).  "The complaint must describe the underlying

6

arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Monroe at 205-206 (quoting Christopher at 416-17).  For example, in Monroe, the United States Court of Appeals for the Third Circuit affirmed dismissal of inmates' access to the courts claim for failure to state a claim:

> In this case, the defendants confiscated all of the plaintiffs' . . . legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes.  In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike.  That claim, on its face, was insufficient to state a claim under Harbury.  So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous.  Nor did they maintain that they had no other remedy to compensate them for their lost claims.  Even liberally construing their complaints as we must do for pro se litigants, they do not sufficiently allege that they have suffered actual injury.

Monroe, 536 F. 3d at 206 (citations and footnote omitted).

In this Complaint, Plaintiff apparently alleges that defendants Assistant Superintendent Johnson and Director Merrill Main caused dismissal of Aruanno v. Booker, Civil No. 08-0305 (JLL) opinion (D.N.J.), aff'd, 397 Fed. App'x 756 (3d Cir. 2010).  However, this Court dismissed the excessive force claim against Booker due to Mr. Aruanno's willful failure to comply with discovery.  The Third Circuit affirmed the dismissal, finding that "[t]he record supports the District Court's finding that Aruanno's failure to cooperate with discovery was willful."  Aruanno, 397 Fed. App'x at 758.  Accordingly, Plaintiff cannot show that he suffered actual

injury with respect to Civil No. 08-0305 (JLL), and the Complaint will be dismissed with prejudice.[3]

### IV.  CONCLUSION

For the reasons set forth above, the Court will dismiss the Complaint with prejudice.

/s/ Jose L. Linares
**JOSE L. LINARES, U.S.D.J.**

Dated: June 22, 2011

---

[3] This Court will not grant leave to amend to assert an access to courts claim involving some other case, as Plaintiff is bringing a general access to courts claim in Aruanno v. Johnson, Civil No. 11-1151 (WJM) (D.N.J. filed Mar. 1, 2011).